## DAVIS v. HOLY TERROR MINING COMPANY.

An objection to evidence on the ground that it is incompetent is insufficient to justify a review of an adverse ruling on appeal.

The overruling of an objection to a question was harmless, where the same facts had been testified to by another witness without objection.

Where the answer to a question was not responsive, the remedy of the adverse party was by motion to strike on that ground.

In an action for injuries to a servant by an alleged defect in defendant's machinery, evidence as to the condition of the machinery with reference to its being heated two weeks prior to the accident was not objectionable for remoteness.

No other ground of attack on an instruction given is available on appeal than that contained in the assignment of error.

The trial court is not required to cover every phase of the case in a particular instruction.

Where, in an action for injuries to a servant, the court charged that every one is responsible, not only for the result of his own unlawful acts, but also for any injury caused to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has unlawfully, or by want or ordinary care, brought the injury upon himself, such charge, in the absence of a request for a more particular charge, was a sufficient presentation of the rule that plaintiff could not recover if he was guilty of contributory negligence.

Appellant cannot object to the giving of an instruction, where substantially the same instruction was given at its request.

In an action for injuries to a miner, evidence held sufficient to sustain a finding of negligence on the part of the mine owner in failing to keep an air compressor in proper repair, which resulted in forcing gas and hot air into the mine.

Plaintiff and certain other miners, while at work in a winze nearly 100 feet below the tenth level, discovered gas and foul air escaping into the mine through the air pipes, and recognizing the danger, immediately attempted to escape by signaling the hoist operator. Plaintiff and his companions got into the bucket and were hoisted to the 18-foot level, when the bucket stopped. They remained there some 20 minutes before they attempted to climb the walls of the winze, during which they were overcome, and plaintiff fell against the heated machinery, and was injured. **Held,** that plaintiff was not guilty of contributory negligence.

In an action for injuries, the measure of damages is such a sum as will compensate the plaintiff for all loss and harm suffered and proximately caused by the breach of defendant's obligation, whether such loss or harm could have been anticipated or not, as provided by Rev. Civ. Code, §§ 2287, 2312.

In estimating damages recoverable for personal injuries, the jury is entitled to consider plaintiff's age and condition of life, the physical injury inflicted, the bodily pain and mental anguish endured, all the expenses incurred in treatment of the case, and any and all damages appearing from the evidence to have resulted, or which will result from the injury, including temporary or permanent reduced capacity to earn money.

Under the express provisions of Rev. Civ. Code Proc. § 301, subd. 5, a new trial should be granted for excessive damages, if the recovery is so excessive as to clearly indicate that the verdict was given under the influence of passion and prejudice.

Plaintiff, a miner, 26 years of age, and with an expectancy of 38 years, was seriously injured by a defect in the machinery used in the operation of the mine. Plaintiff had been in previous good health, was sound in body and limb, weighed 160 pounds, and was earning $3.50 a day. In consequence of the accident, he was unconscious for several hours, confined to his bed for 5 weeks, during which he suffered intense pains from burns and mental anguish, and was unable to work for more than 2 months. At the time of the trial he weighed 135 pounds, his hearing was seriously impaired, and while his burns had healed, one of his legs was numb from the injury, could not be fully straightened out, and was not as strong as the other. At the trial plaintiff exposed his leg and abdomen to the jury, and a verdict of $10,000 was sustained by the trial judge. **Held,** that such verdict was not so excessive as to require reversal on appeal.

(Opinion filed April 3, 1906.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Minot Davis against the Holy Terror Mining Company. From a judgment for plaintiff, defendant appeals. Affirmed.

*James W. Fowler* and *Chauncey L. Wood,* for appellant.

Damages should be compensatory, and no more. Section 2293 C. C. 1903; Peterson Railway Accident Law, p. 468-9 and 70; Torske v. Com. Lumber Co., 90 N. W. 532; Moore v. Lumber Co., 29 S. 990; Barker v. City of Madison, 22 N. W. 141; Abbott v. Toliver, 36 N. W. 622; A. T. & S. F. R. Co., v. Brown 26 Kan. 443; Collins v. the City of C. B., 35 Iowa 432; Cooper v. Mills County, 28 N. W. 633; K. P. R. R. Co., v. Pevey, 29 Kan. 122; Union Pac. Ry. Co. v. Milliken, 8 Kan. 647. Where an employee, who, in performing his duties, enters a room containing deadly gases, knowing of the danger, he assumes the risks. Williams v. Welton & W. Co., 32 At. 726. The master is bound to disclose latent defects, and dangers, of which he has knowledge, or of which he ought to have knowledge by the exercise of reasonable attention, care and diligence, and of which the servant has no knowledge, and would not discover by the exercise of reasonable care. Cole v. C.

& N. W. R. R. Co., 37 N. W. 84; Carlson v. Sioux Falls W. Co., 8 S D. 47; Lumley v. Caswell, 47 Ia. 159; Ladd v. Newbedford R. R. Co., 119 Mass. 412; LaClair v. R. R. Co., 20 Minn. 1; Lanning v. N. Y. Central R. R. Co., 49 N. Y. 521; Gibson etc., R. R. Co., 63 N. Y. 449; Dorsey v. Construction Co., 42 Wis. 583; Ft. Smith Oil Co., v. Slaver, 24 S. W. 106; Cole v. C. N. W. Co., 37 N. W. 84; Shelinsky v. H. & T. Co., 40 At. 1127; Williams v. Welton & W. Co., 32 At. 726; Fordyse v. Stafford, 22 S. W. 161; Texas M. R. Co., v. King, 37 S. W. 34; Replea v. Tomahawk, P. & P. Co., 85 N. W. 960; Osburn v. Leigh Valley Co., 71 N. W. 814; Mielke v. C. & N. W. R. Co., 79 N. W. 22; Southern R. R. Co., v. Harbin, 36 S. E. 218. It was the master's duty, to exercise reasonable care, in doing the things, which in the instruction given by the Court, he informed the jury, must be done by the defendant at all hazards. Gates v. The C. M. & St. P. R. R. Co., 2 S. D. 422; Texas M. Ry. Co. v. King, 37 S. W. 34; Revised Codes, page 776, Sections 1449 and 1450. It is the duty of the Court, to charge the jury whether requested or not upon every point material to the decision of the case, upon which there is evidence, and to charge correctly and fully. Moline Plow Co. v. Gilbert et al, 3 Dakota 239.

*Buell & Gardner, S. C. Polley* and *C. J. Patton* for respondent.

Where the damages sustained cannot be measured in money the jury are clothed with a large discretion and their verdict will not be disturbed unless the disparity between the award of damages and the evidence be so great as to indicate clearly that the jury acted in disregard of the evidence and from passion and prejudice. Watson on Damages for Personal Injury, §§ 326, 327, 328, 329, 330; 8 Amer. & Eng. Enc. of Law, p. 629, 630, 655; Galloway v. C. M. & St. P. R. R. Co., 56 Minn. 346; Smith v. Whittier, 30 Pac. 529; Morgan v. So. Pac. R. R. Co., 30 Pac. 601; McLean v. City of Lewiston, 69 Pac. 478; Hall v. Chicago B. & N. R. R., 49 N. W. 239; Taylor v. Nevada, Cal. & Ore. R. R. Co., 69 Pac. 858. This was in the nature of an unexpected situation upon which negligence could not be predicated. Turner v. Coldsboro Lumber Co., 26 S. E. 23; So. Pac. Co. v. Wellington, 36 S. W. 1114; Jeffrey v. Keokuk R. Co., 56 Iowa 546; Floetell v. Third Ave. R. Co., 41 N. Y. 792; Donahue v. Drown, 154 Mass. 21; S. W. Improvement

Co. v. Smith, 17 A. S. R. 59. The servant is authorized to rely upon the performance by the master of his duty in this latter respect and is under no obligation to investigate and test the fitness or the safety of the machinery or appliances unless of course, he should know them to be defective. Northern P. R. Co. v. Herbert, 116 U. S. 642; Jager v. California Bridge Co. 104 Cal. 542; Rodney v. St. Louis & S. W. R. Co. 127 Mo. 676; Mason etc. R. Co. v. Yocker, 103 Fed. 265; Silveria v. Iverson, 128 Cal. 187; Kane v. Smith, 89 N. Y. 375; Granis v. Chicago etc., R. Co. 81 Iowa 424; Johnson v. First National Bank, 79 Wis. 414; Anderson v. Bennett, 8 A. S. R. 311; Kranz v. L. I. R. Co., 20 A. S. R. 716; Elridge v. National City etc. R. Co., 100 Cal. 282. The duty of the master to furnish reasonably safe appliances and to keep them in reasonably safe condition and to furnish the servant with a reasonably safe place in which to work, and to keep it in such condition, and to apprise the servant of any increase in the hazards and risks of his employment known to the master and unknown to the servant, are personal duties of which the master cannot divest himself and he is responsible as for his own personal negligence for want of proper precaution on the part of his subordinates and agents. Mobile etc. R. Co. v. Godfrey, 155 Ill. 78; Chicago etc. R. Co. v. Jackson, 55 Ill. 492; St. L. A. & T. etc. R. Co. v. Eggmann, 161 Ill. 155; Jackson etc. R. Co. v. Moore, 39 Kan. 632; Coombs v. N. B. Cordange Co. 102 Mass. 572. The master is liable for injuries received from defects in the place of work or in the machinery and appliances which are known to him or which should have been known in the exercise of reasonable and proper care on his part; and this is true although the negligence of a fellow servant of the person injured contributed to the accident. Davidson v. S. Pac. R. Co. 44 Fed. 476; Texas etc. R. Co. v. Barrett, 166 U. S. 617; Greenleaf v. Ill. Central R. Co., 29 Iowa 14; Chicago etc. R. Co. v. Shannon, 43 Ill. 338; Jackson etc. R. Co. v. Hult, 29 Kan. 149; Sweet v. Boston etc. R. Co., 156 Mass. 288; Morten v. Detroit etc. R. Co. 81 Mich. 423; McCarragher v. Robers, 120 N. Y. 526; Madau v. White River Lumber Co., 76 Wis. 120. The question to which objection is made is as follows: "In order to communicate from the bottom of the wenz to the Keystone mill for instance,

what was necessary?" The question was objected to as "incompetent." This objection is insufficient to justify a review on appeal. State v. LaCroix, 8 S. D. 369; Matthews v. Silvander, 14 S. D. 505; Kolka v. Jones, 6 N. D. 461.

HANEY, J. This is an action to recover for injuries sustained by the plaintiff while employed in the defendant's mine. The jury returned a verdict for $10,000, judgment was entered thereon, defendant's application for a new trial denied, and this appeal taken.

The issues involved are thus stated by the learned circuit court in its charge to the jury, to which statement no exception was taken : "That the defendant company had in operation for some time prior to October 22, 1901, and up to within a few minutes before the injury of the plaintiff, certain machinery for the purpose of supplying air to the point where this plaintiff and others were working, which machinery is commonly called an air compressor, and which machinery also operated the pumps for the purpose of raising the water from the bottom of the shaft; and while the plaintiff and others were working in said shaft, the said machinery, which was insufficient in capacity and by reason of the negligence and carelessness of the defendant, its agents, and employes, became out of order in such manner as to fill said mining shaft with gas and heat, thereby burning the body of this plaintiff in such a manner as to cripple him for life, thus preventing him from earning a living at manual labor, and causing him great mental and bodily pain and suffering to his damage in the sum of $20,000. The defendant answering plaintiff's complaint, admits that it is a corporation, and was at the time mentioned in the plaintiff's complaint transacting business upon its property at Keystone, in said county and state, and was using in the prosecution of its business certain machinery and workmen, and among the workmen employed was the plaintiff, but it specifically denies that the plaintiff has been damaged in the sum of $20,000, or in any other sum whatever, by reason of the acts complained of in his complaint, and denies that it is, in any way, accountable for any injuries which were received by the said plaintiff at the time mentioned in plaintiff's complaint. It further denies that the said injuries, if any were received by plaintiff were caused by the negligence, carelessness, or fault of the defendant, its agents, or

servants, or that such injuries were received because of defective machinery, or the negligent management of such machinery by its agents, servants, or employes, and alleges that if the plaintiff received any injuries at the time complained of, it was the result of his own negligence and carelessness, or that of his co-workers engaged in the same general business with him."

It is contended the court erred in overruling defendant's objection to the following question propounded to one of plaintiff's witnesses on his direct examination: "Q. In order to communicate from the bottom of the winze to the Keystone Mill, for instance, what would be necessary? (The defendant objects to the question as incompetent; objection overruled, and defendant excepts.)" The contention is untenable: (1) Because the objection was insufficient to justify a review on appeal; (2) because, if there was error in the ruling it was harmless, the same facts having been testified to by another witness without objection. State v. LaCroix, 8 S. D. 369, 66 N. W. 944; Mathews v. Silvander, 14 S. D. 505, 85 N. W. 998; Muller v. Flavin, 13 S. D. 595, 83 N. W. 687. This question was asked by the plaintiff of one of his witnesses: "Q. Did you observe the condition of the receiver and the pipe running from the receiver to the mine at that time, and if so in what condition did you find it? By Mr. Bennett (attorney for defendant). Q. How long was this of which you are speaking prior to the time of the alleged accident in the mine? A. Well, as near as I can come to it, it was two weeks. Defendant now objects to the testimony as to the condition of the machinery at that time or any opinion expressed by the witness on the condition of the machinery two weeks before the alleged accident. Testimony must show the condition of the machinery at the time of the accident. Objection overruled. Defendant excepts. A. It was red hot." The answer was not responsive; there should have been a motion to strike out on that ground; and, moreover, the time was not so remote as to render the evidence inadmissible. There was no reversible error in respect to this ruling.

Plaintiff's instruction No. 6, was as follows: "You are instructed, gentlemen of the jury, that it is the duty of the master, in this case the defendant, the Holy Terror Mining Company, to fur-

nish its servants with a reasonably safe place in which to work, reasonably safe and proper materials, machinery and appliances, and to keep them in proper repair and reasonably safe; and you are further instructed that these duties are personal in their nature, and the master cannot escape liability by the attempted delegation thereof to some one else. The servant has the right to presume that the master has discharged his duty in these regards, and if you find from the evidence in this case that the air compressor in use at the Holy Terror Mine on the 22nd day of October, A. D. 1901, was not kept in a reasonably safe condition, but was negligently allowed to get out of repair, whereby the compressor became ignited, forcing gas and foul air into the compartment of said mine in which the plaintiff was engaged at work, and that said gas and impure air suffocated and overcame him, causing him to fall upon the pump, or other appliances in said compartment, and resulting in the injuries of which he complains, then I instruct you that the defendant would be liable to the plaintiff for said injuries and you will assess the plaintiff's damages." Concerning this instruction defendant's assignment of error is as follows:

"The court erred in giving instruction No. 6, requested by the plaintiff. For the reason that said instruction is misleading in this that plaintiff's right to recover is based upon the negligence on behalf of the defendant, without informing the jury that even under all the circumstances supposed in the instruction the plaintiff should be found without fault or negligence on his part and since there is no other instruction given by the court, that can be reasonably taken to cure the defect above specified in said instruction No. 6." Presumably this assignment corresponds with the specification of error relating to the instruction in the bill of exceptions or statement of the case upon which the motion for a new trial was based, otherwise no objection to the instruction was preserved, and no other ground of attack than the one assigned is now available. Hedlun v. Mining Co., 16 S. D. 261, 281, '92 N. W. 31. It is not tenable for the reason that the court was not required to cover every phase of the case in that particular instruction, and in another portion of its charge the jury was instructed that "every one is responsible, not only for the result of his own unlawful acts, but also for any

injury caused to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has unlawfully or by want of ordinary care brought the injury upon himself." In the absence of any request on the part of the defendant to particularly charge with respect to contributory negligence, this general statement on the subject was sufficient.

The contention that the court erred in giving plaintiff's instruction No. 9 is clearly untenable for the reason that substantially the same instruction was given on request of the defendant.

There being no available objections to the charge, the next inquiry is whether the evidence, considered with reference to the issues submitted to the jury, was sufficient to justify a verdict for the plaintiff. If the jurors understood and obeyed the court's instructions they must have been satisfied that the plaintiff was without contributory fault and that the defendant was negligent with respect to the selection of its employes, the equipment of its mine, or the condition of its appliances. We think the evidence disclosed no want of care in the selection of employes, but as to the character and condition of defendant's appliances there certainly was at least room for differences of opinion by equally intelligent and impartial persons. When the accident occurred, the plaintiff with other employes, was working in a winze which extended in a nearly vertical direction about 100 feet down from the tenth level. The drills, pump, and hoist were operated by means of an air compressor.

Concerning what occurred at the time of the accident, the plaintiff testified: "All four of us were there at work when we discovered the gas was escaping. Andy Miller remarked something about bad air, and I do not know what it was. The sensation produced was real warm and hot and oppressive, and affected our breathing. When I found that gas was escaping, I cranked the machine down as tight as I could, and we all got on the bucket. The bad air seemed to be escaping from the machine and pump. The air looked misty and didn't look like it always did. I do not remember anything about the heat, just remember that it was hot there. We all got on the bucket and rung three bells, and he hoisted us up to this 18-foot and stopped and we stood there and rung six or seven times more, and I do not know how many times; per-

haps we stood there 15 or 20 minutes and didn't get any answer, and he would not hoist us and we started to climb out. The air appeared to be getting worse all the time. It appeared like an hour and a half to me. Andy Miller got out first. He started up the cable, or this go-devil as we called it, and I started out right after him, and he went up about four sets of these timbers and I was up about three sets up above the pump and he fell right back over me, and that is the last that I can remember. My sensation was to get up on the hanging rod, but I never got there. The air was getting worse all the time. It seemed like I was smothering. I do not remember of falling. Miller fell over me, he didn't hit me. I saw nothing of him after I saw him fall. The next I remember I was down town in the old building that Al. Arrington was living in. I do not remember what time of day it was. * * * I was suffering considerable pain from my body and leg. My mind wasn't clear as to what had taken place." It is undisputed that the compressor became ignited, forcing gas and foul air into the compartment of the mine in which the plaintiff was working, and that such gas and impure air suffocated and overcame him, causing him to fall upon the pump or other appliances in the compartment, and resulting in the injuries for which he seeks to recover. Who or what was responsible for the igniting of the compressor? Was the jury justified in finding, in the language of the court's charge, "That the compressor was not kept in a reasonably safe condition, but was negligently allowed to get out of repair?" The accident occurred October 22, 1901.

Charles Stevens, an experienced engineer, called as a witness by both parties, testified:. "This machine went foul or took fire about six weeks before the 22nd of October, 1901. At the time it took fire there was some indication of escaping gas in the mill there. One of the valves hung up, and it came back through the receiver. The compressor shoved the valve back, and it refused to go back and then that left a free opening; the intake port was open, and that left direct communication, and it went out through the intake pipe, and the gas escaped in that way. The gas had got to go out with the pressure and whichever way the pressure goes the gas goes. * * * So that if the machine is running in that condition it will pump the gas and hot air into the mine."

James M. Lintz testified on behalf of the plaintiff as follows: "Mining is my business.. I was called to help remodel the air compressor, at the Keystone Mill, connected with the Holy Terror Company's property, just before this accident occurred—a month or six weeks before the 22nd of October. We found the air cylinder full of burnt grease or oil, and the water jacket stopped up with mud around its cylinder. Two parties assisted me in cleaning this machinery out. The foreman of the job was Charles McCreary. The other man I was not acquainted with. Mr. Trengrove, the superintendent, called me to assist. I think it was about 9 o'clock at night. I had gone to bed, and he came and woke me up to help. He asked me if I would come there and help Charlie McCreary clean out the air compressor, that it was a shift's work and that it had burned out and had to be remodeled. We didn't clean it out, we took the burnt grease out of the cylinder, and took a wire and a hose in order to get water down there where it should go; we took a wire and ran down through the water jacket to the discharge in the water jacket and shoved the hose in that mud to try to force it through, but I don't think we ever got it through."

The deposition of Thomas J. Whalen, offered on behalf of the plaintiff, contained these statements. "My business is engineering and have followed it nine years. * * * I remember the accident at the mine October 22, 1901. I was not present at the time. I saw some of the dead men. I remember the accident in which Miller, Polman, and Crouter were killed and Minot Davis was injured. Prior to that time I had occasion to examine the engine and air compressor used to supply the men with air, and to run the drills, pumps and hoists. * * * It was about two weeks before the accident; it was in a very dangerous, careless condition. It was full of corroded burnt oil. The ports were all burnt with corroded oil. The valves were badly burnt with corroded oil caused from the oil and fire; the valves and springs we had to use a sledge hammer to get them out; the receiver was very badly burnt, also the pipes to the receiver. That is about the case so far as I know. The superintendent of the mines, Mr. Trengrove, employed me to examine this machinery. I overhauled the pipes leading to the receiver, and I overhauled the air end of the compressor. Also disconnected one

engine from the other, run her on one leg. As to being warm or hot; she was badly expanded, when I examined it, from·heat. The pipe leading from the compressor to the receiver was red hot. * * * The gas was all through the mill. * * * A day or two afterwards I had a conversation with the superintendent. Just a day or two·after the compressor caught fire the first time. Mr. Trengrove wished to know what condition the compressor was in, after I overhauled it. I told him it was in a very dangerous condition and would have to be watched very carefully because the springs had expanded so badly that it took some time to get them down to running size again."

Charles Stevens recalled for further cross-examination, stated: "I spoke in my direct examination about repairing this compressor some weeks before October 22, 1901. Mr. Trengrove knew that she had gone foul; he was right there immediately after it caught fire. I operated the compressor after this repair. I talked with Trengrove about it. As to the condition of the machinery I told him that the compressor was in a very poor shape at that time, and he ought to arrange it in some way to stop an hour every day at noon until we got her in first-class shape again. The proper thing to have done with it would have been to take out the valves until we were sure that they were in proper working shape; clean the valves after the thing had caught fire the first time; it had an effect on the valves to make them stick in some way. He didn't give any orders at all, except one day he called me to stop for an hour. I was under the directions of the superintendent in that matter."

So there was ample evidence tending to show that the compressor was not kept in a reasonably safe condition; that its condition was known to defendant's superintendent, who was not a fellow servant of the plaintiff's; and that the superintendent neglected to take proper precautions to prevent such accidents as the one causing the plaintiff's injury. Was the plaintiff shown to have been guilty of contributory negligence? In determining whether or not a plaintiff has been guilty of such contributory negligence as will defeat a recovery, his actions must be measured by the actions of an ordinarily prudent man, under the same circumstances and in the same position. Heckman v. Evenson, 7 N. D. 173, 73 N. W. 427.

The men in the winze were not in the slightest degree responsible for the igniting of the compressor. It does not appear that either of them neglected any duty preceding the time when gas and foul air began to invade the mine. The danger was imminent; escape difficult. In absence of convincing proof to the contrary, it should be inferred that one thus suddenly confronted with such a situation would make every effort within his power to preserve his own life and avoid injury. There was brief time for reflection. All were menaced with the same dangers; all confronted the same difficulties. Naturally each would do what seemed best under the circumstances, and there is nothing in the evidence to warrant the conclusion that these unfortunate men acted otherwise than ordinarily prudent and experienced miners would have acted under the same circumstances. The plaintiff says he "cranked down the machine as tight as he could," that the proper signals were given to hoist the bucket, and that when it stopped he endeavored to escape by the only other means provided by the defendant. The criticism that he remained too long on the bucket before attempting to climb the walls of the winze is not well founded. In view of the undisputed facts it is more likely the men were on the bucket 15 or 20 seconds than that they were there "15 or 20 minutes." When delay means death, seconds may seem longer than minutes, or even hours, to him who waits. But, if they did remain 20 minutes, it does not follow that the plaintiff failed to exercise reasonable care. Neither he nor his companions could have safely left the bucket until all hope of its being being hoisted in response to the signals was lost. Had they abandoned the bucket, and had it then ascended, as it was expected to do, the consequences might have been more serious than if they remained. In weighing such chances the judgment of equally prudent persons might differ. Plaintiff's situation must be viewed as he saw it, not as it now appears in the light of subsequent events to persons who are exposed to no perils. Notwithstanding one witness states that he found the bucket off the go-devil when he descended the winze after the accident, it would be unfair to infer that it was not in place while the signals to hoist were being given and the miners were waiting to be hoisted. If the hoisting of the bucket had been obstructed by reason of its being off the go-devil, would

not that fact have been observed by the engineer in charge at the tenth level and by the men who were waiting? It was probably misplaced, if at all, when the men abandoned it. We are satisfied there was nothing in the evidence to justify the jury in finding the plaintiff guilty of contributory negligence, and that the evidence was sufficient to justify a verdict for the plaintiff.

Finally, it is earnestly insisted that the verdict should be vacated and a new trial granted because of "excessive damages appearing to have been given under the influence of passion or prejudice." The measure of damages, in such actions as this, is the amount which will compensate for all the loss or harm suffered by the plaintiff, in person or property, proximately caused by the breach of defendant's obligation, whether such loss or harm could have been anticipated or not. Rev. Civ. Code, §§ 2287, 2312. The legislature has wisely refrained from attempting to fix any precise and definite rule. Within the limits of compensation for proximate detriment the amount recoverable must depend upon the circumstances of each peculiar case, and is left to the good sense and discretion of the jury. In making the estimate the jury should take into consideration the age and condition in life of the plaintiff, the physical injury inflicted, the bodily pain and mental anguish endured, all expenses incurred in the treatment of the case, and any and all damages which it may appear from the evidence have resulted or will result from the injury. Whether the injury is temporary or permanent, and whether a capacity to earn money has been reduced by the accident, may also be taken into consideration. 13 Cyc. 137. And when the amount has been so ascertained it must stand, though the court might, as a juror, have awarded a different sum. But the estimate must express the honest judgment of fair-minded men, and if the recovery is so excessive as to clearly indicate that it was given under the influence of passion or prejudice, a new trial should be granted in order that the estimation may be made by a competent tribunal. Rev. Code Civ. Proc. § 301, subd. 5; Murray v. Leonard, 11 S. D. 22, 75 N. W. 272. In the case at bar it must be presumed that the jury was properly instructed as to the measure of damages. It must also be presumed that the jurors were free from passion and prejudice unless there is sufficient difference be-

tween the verdict and the amount. of recovery warranted by the evidence to compel the conclusion that the action of the jury was influenced by improper motives.   There was evidence tending to prove this state of facts:  When the accident occurred the plaintiff was 26 years of age with an expectancy of 38 years.   He was in good health, sound in body and limb, weighed about 160 pounds and was earning $3.50 per day as an experienced miner.   In consequence of the accident he was unconscious for several hours, and confined to his bed for about 5 weeks, during which time he suffered intense physical pain and great mental anguish, fearing he might never again be able to support his wife, who was ill, and two children, who were of tender years.   It was more than two months before he could perform manual labor of any kind.   At the time of the trial he weighed not to exceed 135 pounds, his hearing was seriously impaired, and the effects of the burns on his abdomen and leg, resulting from his falling, while unconscious, upon the ignited machinery of the mine, were apparent and declared by competent authority to be permanent.   The jury and trial judge, without objection, were given an opportunity to ascertain the extent of the plaintiff's injuries, not available to this court, as shown by the following excerpt from appellant's abstract:  "(The plaintiff here exhibited his leg to the jury.)   It has been healed up about two months.   My leg is numb from the injury.   I can't straighten out the limb only this much (showing).   It gives me pain.   It is not near as strong as the other.   In working it pains me, and is weak, and makes me lame. (Plaintiff now exhibits to the jury the injury he received in the abdomen.) These burns (last exposed) gave me pain during the time I was sick, and considerable since.   They have been healed up about two months."   So the trial judge and jurors saw what is not attempted to be described in the statement of the case.  Under such circumstances would it not be presumptious for this court to set its judgment above that of the learned circuit judge, who, upon due reflection and consideration, decided that the damages were not excessive?  It is true the plaintiff admitted on the witness stand and others testified that he had done manual labor after the accident for which he was paid at the rate of $2.50 per day.   But the ability to earn wages is only one element of damage in this case.   It is not

the sole criterion. It does not follow that the loss of a limb is not a detriment because the miner who suffers the loss might make more money in some other vocation than he was making before the injury was received. More was involved in the assessment of these damages than plaintiff's ability to earn money before and after the accident. There was physical pain, mental anguish, expense, loss of time, loss of health, and permanent injuries, the extent and probable consequences of which were fully exhibited to the jury but which are not disclosed by the record before us. Being absolutely in the dark as to the real nature and extent of such injuries this court cannot ascribe improper motives to the jury without assuming that it was impossible for the plaintiff to have sustained injuries justifying a verdict of $10,000. Actions for personal injuries, wherein the question of excessive damages has arisen, are numerous. Many may be found where $10,000, or less was deemed excessive and as many more where a larger amount was sustained. But, as has been said, each case must be determined with reference to its own facts and circumstances and affords no guide for deciding other cases beyond the general principles which it establishes. So, being unable, upon the record before us, to conclude that the amount of the verdict clearly indicates the influence of passion or prejudice, the presumptively honest judgment of the jury must stand.

The judgment and order appealed from are affirmed.