PEARSON, Respondent, v. ANDERSON, Appellant.

(224 N. W. 185.)

(File No. 6437.   Opinion filed March 16, 1929.)

*Null & Royhl,* of Huron, for Appellant.

*C. Chris Gleim* and *Chas. R. Hatch,* both of Wessington Springs, for Respondent.

BROWN, J. Plaintiff was employed in defendant's hardware store in Lane as a tinner and general mechanic, and also waited on customers part of the time. On July 18, 1925, defendant, who had received a barrel containing about 52 gallons of high-test gasoline, directed plaintiff to put it in the basement of the store, which was done. The tinner's workshop was in the basement, where a gasoline furnace was used for heating soldering irons, and there was also an electric motor and pump for pumping out water which collected in the basement. This pump had to be operated every day, and there is evidence that the motor always emitted a spark when first started.

Defendant testified that after the barrel of gasoline was placed in the cellar he heard pounding in the basement, as if some one was striking a hammer on a cold chisel, and on going into the basement he found plaintiff endeavoring to loosen the threaded tap in the end of the barrel; that he told him to desist, as a spark might fly from the chisel and ignite the gasoline; and that he told plaintiff to wait and he would get proper tools and assist him in opening the tap. Defendant then sent his son to a blacksmith's shop to borrow a trimo wrench for the purpose of unscrewing the tap, but there is no evidence that this wrench was brought to the attention of plaintiff. Plaintiff denies that he used any hammer or chisel and denies the conversation testified to by defendant, but says he needed to get a five-gallon can of this gasoline to serve customers from, as it was usually called for in small quantities for operating gas irons, mangles, and lamps, and in order to get this five-gallon can filled he got a wrench in the basement and unscrewed the tap, and that as soon as he did so the gas spurted out in his face and covered his clothing; that he left the tap off and went upstairs and wiped off his face with his handkerchief and told defendant's wife, who was in the store, what had happened; that he then continued working upstairs waiting on customers until the

gas had completely evaporated from his clothing. Defendant was in the store at the time, but did not hear the conversation between his wife and plaintiff. Later, plaintiff returned to the basement and found that the water had accumulated in a well or sump in the floor, constructed to collect it, and that the pump should be set going to pump it out. He says it was about an hour from the time he had loosened the tap on the gasoline barrel until he went back to the basement. The testimony of defendant and his wife would indicate that the time was from 20 minutes to a half hour.

The switch for starting the pump could be reached when about half way down the stairway, and plaintiff called his ten year old son, who was in the upper part of the store, to turn this switch. The boy did so, and instantly there was a terrific explosion. The boy received burns which proved fatal. Plaintiff rushed upstairs with his clothing in flames, which were extinguished by defendant wrapping a blanket around him. The building and its contents burned to the ground. Plaintiff was terribly burned, was in a hospital for many weeks, and medical testimony was to the effect that he would probably never be able to follow his occupation again and would in all probability never be able to do anything but light work.

Defendant had not complied with the Workmen's Compensation Law (Rev. Code 1919, §§ 9436-9491), and in an action for damages plaintiff recovered a judgment, from which, and from an order denying a new trial, defendant appeals. It is not claimed that the verdict was excessive, and therefore no further statement need be made as to the nature and extent of plaintiff's injuries, or of his earning capacity before the explosion.

In the instructions, to which no exception was taken by either party, the court charged the jury that the only claim of negligence to be considered was the claim that defendant was guilty of negligence in placing the barrel of gasoline in the store building in which plaintiff was employed to work, in view of all the circumstances and surroundings, under the definition of negligence as given in other parts of the charge.

The evidence tended to show that the gasoline in this barrel was of highly dangerous character and was purchased ordinarily in small quantities for use in irons, gas lamps, torches, and for priming gas engines when cold in the wintertime; that defendant

had never ordered as much as a barrel of it in warm weather before; and that when he gave the order for this barrel an employee of the Standard Oil Company in the station where the order was given told defendant that this gasoline was too dangerous for him to handle and that he ought not to get it. Plaintiff says that when defendant told him to put the barrel in the basement he objected and said that it ought not to be put in the basement, but that defendant insisted on it being taken to the basement, saying that it would not evaporate so much there as upstairs.

■ Defendant argues only two assignments of error, one that the evidence was insufficient to justify the verdict and that the verdict is against the law, and the other that the court erred in overruling defendant's objection to a question asked plaintiff concerning a conversation he said defendant had with him while he was in the hospital. The answer was: "If any insurance man comes in and asks you how much gasoline we took down in the basement, tell him only five gallons." Neither the question nor the objection discloses the nature of the answer that would be given, and the question, "What was that conversation?" certainly did not disclose that the conversation would be immaterial, which was the only objection urged against it. No motion was made to strike out the answer, and, as there was no error in overruling the objection, this assignment cannot be sustained. Davis v. Holy Terror Min. Co., 20 S. D. 399, at page 405, 107 N. W. 374.

■ The next contention is that the evidence is insufficient to show that defendant was guilty of any negligence in placing the barrel of gasoline in the basement. Plaintiff testifies that defendant said his reason for putting it in the basement, rather than leaving it upstairs, was that evaporation would be less in the basement. Defendant testifies that his reason for ordering it put in the basement was because the basement was cooler and it would be easier to take the gasoline out of the barrel; there would not be the danger in pumping it out of the barrel in the cooler location; it would make it safer to pump it out. The only reason that it would be safer to pump the gasoline out when it was cooler would be because at the lower temperature it would not evaporate so rapidly. But it was high-test gasoline, and defendant clearly recognized that it would evaporate to some extent while being pumped out, even in the cooler temperature of the basement. To what extent it would

evaporate at such temperature he evidently did not know and made no effort to ascertain. The basement was a comparatively closed-in and restricted area, and evaporation of gasoline into the air in such a confined area would naturally tend to make an explosive mixture. Defendant knew and anticipated that the barrel would be opened from time to time while they were pumping out supplies to customers or filling the five-gallon can for that purpose. He also knew that the tinner's furnace was in operation more or less frequently, and that the electric pump, which was started and used every day, gave off a spark every time it was started. While he was not bound to anticipate that one pumping five gallons or a lesser quantity from the barrel would forget to replace the plug and leave the barrel unplugged for a period of from 20 minutes to an hour, yet such forgetfulness not infrequently occurs, and might not unreasonably be anticipated, and, as the testimony shows the diameter of this plug hole to have been at least 2¼ inches, evaporation would be quite rapid.

We think there was sufficient evidence to carry the case to the jury on the question of defendant's negligence in having the barrel placed in the basement at all. That plaintiff was guilty of contributory negligence is beyond dispute upon the record, but, since defendant had not complied with the provisions of the Workmen's Compensation Law, contributory negligence is not available as a defense in this case.

The judgment and order appealed from are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., concurs in result.