1997 SD 87

**Kenneth KIESER, Gladys Kieser, and Jeff Kieser, Plaintiffs and Appellants,**

v.

**SOUTHEAST PROPERTIES, A Partnership, and Marvelene Looby and Thomas Looby, Partners, Defendants and Appellees.**

**Nos. 19782, 19792.**

Supreme Court of South Dakota.

Argued April 14, 1997.

Decided July 16, 1997.

Casey N. Bridgman of Bridgman and Adel, Wessington Springs, for plaintiffs and appellants.

Michael J. Schaffer and Kristi Geisler Holm of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees.

MILLER, Chief Justice.

[¶ 1.] Kenneth, Gladys and Jeff Kieser (hereinafter collectively referred to as "Kiesers") appeal the trial court's grant of summary judgment on their claims for defamation and breach of contract against Southeast Properties and the trial court's ruling prohibiting the mention of those claims at the subsequent jury trial. By notice of review, Southeast Properties appeals the trial court's refusal to submit the issue of punitive damages on its claim of wrongful conversion to the jury and the trial court's award of prejudgment interest to Kiesers. We affirm on all issues.

### FACTS

[¶ 2.] Kenneth and Gladys Kieser owned and operated a farm near Wessington Springs, South Dakota, and their son, Jeff, assisted with its operation. In the fall of 1986, due to financial problems and the possibility of foreclosure, Kenneth and Gladys sold the farm to Marvelene and Thomas Looby, as partners in Southeast Properties. The sale agreement allowed Kenneth and Gladys to lease back the property and continue residing in their house in exchange for paying Southeast Properties a portion of the annual crop and cattle production. Jeff, who was to assist in the operation of the farm as a hired hand, was allowed to live rent free in a second house on the property. The agreement gave Kiesers the option to buy back the property after six years.[1]

[¶ 3.] In 1989, Kiesers sold most of their machinery, equipment, feed and other personal property to Southeast Properties. Kiesers continued to operate the farm as independent contractors, but the financial arrangements concerning payment for their work changed.[2] After 1989, rather than paying a portion of the annual crop and cattle production, Southeast Properties paid Kiesers a flat sum of $40,000 to be divided between Kenneth and Jeff.[3] Kiesers were al-

---

1. Even though Jeff did not own an interest in the property, he was also given the option to buy back the property after six years. This provision was made to allow the farm to remain in the Kieser family.

2. The original agreement of the parties was set forth in a written agreement, effective through 1989. After 1989, the parties operated based on oral agreements.

3. This amount consisted of a $32,000 salary and a guaranteed bonus of $8,000.

lowed to continue living on the farm rent free. Letters discussing these arrangements were exchanged, but no formal contract providing the specific terms of the second agreement was executed by the parties.

[¶ 4.] This financial arrangement continued until early 1992. The parties disagree as to what transpired next. Southeast Properties claims the parties orally agreed Kenneth would retire out of the operation by the end of the year. Kenneth and Gladys were allowed to continue living on the farm rent free, and Kenneth was paid a salary of $1,000 a month as a hired man during this year. Jeff's salary was changed to $1,400 per month, with a guaranteed bonus of $3,200 connected to the gain of the cattle. These changes were confirmed by letters from Southeast Properties to Jeff.

[¶ 5.] Kiesers claim that, in January of 1992, Kenneth was given one year's notice of his termination with Southeast Properties. He was informed he would be terminated after one year and would be required to vacate the house at that time. Kiesers maintain that when discussing Kenneth's one-year notice, Southeast Properties orally agreed to give Jeff one year's notice of termination in the event his position terminated.

[¶ 6.] Both parties agree that Thomas Looby informed Kenneth in October, 1992, that Southeast Properties hired another man to operate the farm. Kenneth was terminated in December of 1992 and told to vacate the house by December 15, 1992. Jeff's employment was terminated without notice at the beginning of December of 1992, and he was instructed to vacate the house provided by Southeast Properties.[4]

[¶ 7.] Kiesers ultimately requested unpaid salaries and bonuses, reimbursement for telephone expenses and reimbursement for the use of Jeff's residence from Southeast

Properties in the amount of $8,652.34. Southeast Properties failed to pay the claimed expenses. Kiesers filed a materialmen's lien on cattle sold by Southeast Properties and proceeds from the cattle sale ($8,652.34) were deposited with the Jerauld County Clerk of Courts.

[¶ 8.] In February, 1993, after seeing a sale notice for an auction of Kiesers' personal property, an attorney for Southeast Properties wrote letters to the Jerauld County Sheriff and the Attorney General of South Dakota stating that Kiesers stole a number of items before vacating the property and requested assistance from both law enforcement agencies in pursuing recovery of the property.[5] Both letters repeatedly characterized the property as stolen and specifically and affirmatively stated that Kiesers stole the items. The letters stated that Southeast Properties had invoices and canceled checks for each of the stolen items. Lists detailing the specific items stolen by Kiesers were attached to the letters. A copy of the title for the pick-up truck alleged stolen was also included with the list. The items allegedly stolen totaled $8,087.04.

[¶ 9.] Thereafter, Kiesers instituted an action to foreclose on the materialmen's lien. Southeast Properties counterclaimed, in part, for wrongful conversion of certain income and personal property.[6] Kiesers amended their original complaint to assert additional claims for defamation, breach of contract and reimbursement of additional expenses. Southeast Properties was granted summary judgment on Kiesers' claims of defamation and breach of contract and the remaining issues proceeded to trial.

[¶ 10.] At the close of evidence, Southeast Properties proposed a jury instruction to submit the question of punitive damages to the jury. The trial court denied the instruc-

---

4. Kiesers did not vacate either of the houses located on the farm by December 15, 1992, because they claimed Thomas Looby told them they could stay until January 15, 1993. Looby denies extending the rent-free agreement another month but conceded it was possible. Kiesers eventually vacated the residences in January of 1993, after Southeast properties instituted eviction proceedings.

5. Southeast Properties was not represented by appellate counsel at the time the letters were written.

6. In addition to the items allegedly stolen, Southeast Properties claimed that Jeff deposited a USDA check in the amount of $576.14 in his personal account even though he knew it belonged to Southeast Properties.

tion. The jury returned a verdict of $583.28 in favor of Kiesers. It also returned a verdict of $1,771.27 in favor of Southeast Properties on the wrongful conversion counterclaims. Prior to trial, Southeast Properties conceded that amounts for wages, bonuses and reimbursements were rightfully due to Kiesers, and therefore summary judgment was awarded to them in the amount of $6,452.34. The trial court awarded prejudgment interest to Kiesers on that amount.

[¶ 11.] Kiesers appeal the trial court's grant of summary judgment on their claims for defamation and breach of contract. By notice of review, Southeast Properties appeals the trial court's denial of its jury instruction on the punitive damages and the trial court's award of prejudgment interest.

## DECISION

[¶ 12.] 1. **Whether the trial court properly granted summary judgment on Kiesers' defamation and breach of contract claims.**

### a. *Defamation*

[¶ 13.] Defamation is either libel or slander. SDCL 20–11–2. Both libel and slander are defined as "unprivileged" communications. SDCL 20–11–3; –4. In a cause of action for defamation, privilege may be raised as a defense. *Sparagon v. Native American Publishers, Inc.*, 1996 SD 3, ¶ 25, 542 N.W.2d 125, 132. Communications which are "privileged" are outside the definition of defamation and are defined by statute:

A privileged communication is one made:

(1) In the proper discharge of an official duty;

(2) In any legislative or judicial proceeding, or in any other official proceeding authorized by law;

(3) In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information;

(4) By a fair and true report, without malice, of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

In the cases provided for in subdivisions (3) and (4) of this section, malice is not inferred from the communication or publication.

SDCL 20–11–5. If a communication is "privileged," it is not actionable. *Petersen v. Dacy*, 1996 SD 72, ¶ 6, 550 N.W.2d 91, 92; *Peterson v. City of Mitchell*, 499 N.W.2d 911, 915 (S.D.1993).

[¶ 14.] The test for determining whether a communication is privileged under SDCL 20–11–5(3) involves an inquiry into the individuals or circumstances, involved. *Peterson*, 499 N.W.2d at 915–16 (citing *Uken v. Sloat*, 296 N.W.2d 540, 542–43 (S.D.1980)). " 'An infallible test in determining whether a communication ... is or is not privileged is to ask whether, if true, it is a matter of proper public interest in relation to that with which it is sought to associate it.' " *Id.* (quoting *McLean v. Merriman*, 42 S.D. 394, 399, 175 N.W. 878, 880 (1920)).

An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

*Restatement (Second) of Torts* § 596 (1986). *See also Sparagon*, 1996 SD 3 at ¶ 27, 542 N.W.2d at 132; *Tibke v. McDougall*, 479 N.W.2d 898, 905 (S.D.1992).

[¶ 15.] The privilege created by SDCL 20–11–5(3) is a qualified privilege in that a "communication is only 'privileged' if it is made 'without malice.' " *Peterson*, 499 N.W.2d at 915 (citing *McLean*, 42 S.D. at 399, 175 N.W. at 880). A communication made with malice negates the protections of the qualified privilege and subjects the communication to a cause of action for libel or slander. *Petersen*, 1996 SD 72 at ¶ 8, 550 N.W.2d at 93; *Mackintosh v. Carter*, 451 N.W.2d 285, 287 (S.D.1990). *See also* SDCL 20–11–3 thru –5. Malice may not be inferred and a specific showing of malice, requiring

proof of reckless disregard of the truth or actual malice, must be made by the plaintiff.

"The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he in fact entertained serious doubts as to the truth of his publications." *Tibke,* 479 N.W.2d at 906 (quoting *Uken,* 296 N.W.2d at 543). "Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Janklow v. Viking Press,* 459 N.W.2d 415, 419 (S.D.1990) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968)). This Court has long held that the plaintiff has the burden of proving actual malice that destroys the privilege. *Sparagon,* 1996 SD 3 at ¶ 25, 542 N.W.2d at 132; *Parr v. Warren–Lamb Lumber Co.,* 58 S.D. 389, 393, 236 N.W. 291, 293 (1931). *Petersen,* 1996 SD 72 at ¶ 8, 550 N.W.2d at 93,

[¶ 16.] The facts of this case are clearly controlled by our previous holdings in *Petersen* and *Peterson, supra.* The communications were made by Southeast Properties, through its attorney, by way of two letters to law enforcement officials; one to the Jerauld County Sheriff and the other to the South Dakota Attorney General. These letters, dated February 15, 1993, and February 16, 1993, respectively, were sent immediately after Southeast Properties saw the sale notices for Kiesers' February 27, 1993, auction. The letters included a detailed list of the property allegedly stolen by Kiesers and requested assistance from those officials in recovering the property and prosecuting the theft.

[¶ 17.] Law enforcement officials are naturally interested in crimes which have been committed and they aid in the solution and prosecution of criminal offenses, including theft. The statements contained in the letters by Southeast Properties' attorney involved the theft of property and, as such, were reported to appropriate authorities in an attempt to recover what was believed to be stolen property prior to its sale at a pending auction. We conclude that the sheriff and attorney general were "interested individuals" as contemplated by SDCL 20–11–5(3); accordingly, the communications by Southeast Properties enjoyed a qualified privilege.

[¶ 18.] Kiesers further allege the statements in the letters to law enforcement were also communicated to the community at large by Southeast Properties through the actions of Loobys. Kiesers base this claim on statements made to them by members of the community who were aware of the allegations of theft made by Southeast Properties. They also claim Southeast Properties' letter to the sheriff acknowledges its communication of the statements to the community. This letter stated: "Indeed, apparently Kiesers don't even claim to own the property but merely that they are 'holding it ransom' according to the comments made to people in the community." Kiesers contend this statement indicates the allegations of theft were discussed by Southeast Properties with individuals other than law enforcement.

[¶ 19.] Despite Kiesers' allegations, the record is void of any evidence that Southeast Properties communicated the statements to anyone other than law enforcement officials and the new farm manager.[7] In their depositions, Kiesers stated they knew of no actual communications by Southeast Properties beyond those to interested individuals. The only confirmed discussion of the thefts to the community at large was by Jeff himself when discussing Southeast Properties' allegations with people at a bar. A plain reading of Southeast Properties' reference to the community's knowledge of the thefts in its letter indicates it refers to comments made by Kiesers and repeated by the community, not comments made by Southeast Properties and repeated by the community. Absent any evidence of a communication to the community by Southeast Properties, no genuine issue of material fact has been shown by Kiesers.

---

7. We have previously held an employee to be an "interested individual." *Petersen,* 1996 SD 72 at ¶ 12, 550 N.W.2d at 94. Any statements which Southeast Properties may have made to its farm manager are included in the qualified privilege granted by SDCL 20–11–5(3) and are actionable only upon·a showing of malice. *Id.*

[¶ 20.] Having established that the communications were subject to the qualified privilege of SDCL 20–11–5(3), we must next determine whether they were made with malice so as to remove the privilege. *See Tibke,* 479 N.W.2d at 905.

A "qualified or conditional privilege may be lost when the speaker, on an otherwise privileged occasion, publishes false and defamatory matter concerning another which either (a) he in fact does not believe to be true or (b) has no reasonable grounds for believing it to be true." ... However, a specific showing of malice is required for purposes of raising a genuine issue of a material fact.... Because malice cannot be presumed, the party bearing the burden of proof must establish that there was a reckless disregard for the truth on the part of the accused. "The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he 'in fact entertained serious doubts as to the truth of his publications.' "

*Id.* at 905–06 (citations omitted).

[¶ 21.] In this case, we find no evidence of malice by Southeast Properties in writing the letters. Although a vast majority of the property reported to authorities actually was not stolen, this is not the applicable test. Kiesers have offered no proof that Southeast Properties did not believe, at the time it communicated the allegations, that Kiesers stole the listed property. Kiesers admitted in their depositions that they owned property identical or very similar to that of Southeast Properties. Invoices and copies of canceled checks were referenced by Southeast Properties for those items characterized as stolen. Although Kiesers claim Southeast Properties should have known that the truck and other items listed on the sale notice could not have been theirs, despite the similarities to property owned by Southeast Properties, we have previously held that failure to investigate does not constitute malice. *Peterson,* 499 N.W.2d at 916; *Janklow,* 459 N.W.2d at 421.

[¶ 22.] Kiesers failed to offer any evidence of malice sufficient to overcome the qualified privilege granted by SDCL 20–11–5(3). Thus, Kiesers have failed to raise an issue of material fact and the trial court's grant of summary judgment on the defamation claim is affirmed. *See Peterson,* 499 N.W.2d at 917.

### b. Breach of Contract

[¶ 23.] Jeff claims he was entitled to one full year of additional wages ($20,000) after his termination by Southeast Properties because of an oral agreement between the parties. He maintains that Southeast Properties orally agreed to provide him a one-year notice of termination of his employment and this agreement was breached when he was fired, without notice, in December of 1992. The trial court determined no issues of material fact existed and concluded as a matter of law that no oral agreement existed between the parties to provide a one-year notice of termination. We agree.

[¶ 24.] By his own sworn deposition testimony, Jeff admitted the parties never agreed to a one-year notice of termination. "It is settled law in this jurisdiction that a party cannot claim benefit of a version of the facts more favorable to his contentions than he gave in his own sworn testimony." *Nelson v. WEB Water Dev. Ass'n, Inc.,* 507 N.W.2d 691, 699 (S.D.1993). Jeff's deposition indicates there was never an agreement by the parties concerning the one-year notice. Absent such an agreement, no contract, oral or written, existed to provide Jeff with a one-year notice of his termination. SDCL 53–1–1, –2. The lack of an agreement between the parties warrants affirmance of the trial court's grant of summary judgment for Southeast Properties on the breach of contract claim. *See Garrett v. BankWest, Inc.,* 459 N.W.2d 833, 840 (S.D.1990).

[¶ 25.] **2. Whether the trial court erred in failing to submit the question of punitive damages to the jury.**

[¶ 26.] Following the presentation of evidence, the trial court refused Southeast Properties' proposed jury instruction on punitive damages for its wrongful conversion claim. The trial court found there was not sufficient evidence to submit the question of punitive damages to the jury and denied the instruction.

[¶ 27.] A trial court's finding concerning whether to submit the issue of puni-

tive damages to the jury will not be disturbed unless clearly erroneous. *Schuldies v. Millar,* 1996 SD 120, ¶ 32, 555 N.W.2d 90, 99; *Isaac v. State Farm Mut. Auto. Ins. Co.,* 522 N.W.2d 752, 761 (S.D.1994). A finding is clearly erroneous if, "after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Fanning v. Iversen,* 535 N.W.2d 770, 773 (S.D.1995) (quoting *Cordell v. Codington County,* 526 N.W.2d 115, 116 (S.D.1994)).

[¶ 28.] Punitive damages are authorized by statute.

> In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, ... committed intentionally or by willful and wanton misconduct, in disregard of humanity, the jury, in addition to the actual damage, may give damages for the sake of example, and by way of punishing the defendant.

SDCL 21-3-2. Before the issue of punitive damages may be presented to the jury, a hearing must be held to determine if a basis exists for such a claim.

> In any claim alleging punitive or exemplary damages, before any discovery relating thereto may be commenced and before any such claim may be submitted to the finder of fact, the court shall find, after a hearing and based upon clear and convincing evidence, that there is a reasonable basis to believe that there has been willful, wanton or malicious conduct on the part of the party claimed against.

SDCL 21-1-4.1. There is no requirement that the required hearing take place before the trial; it may be held at the close of evidence. *Schuldies,* 1996 SD 120 at ¶ 32, 555 N.W.2d at 99; *Brandriet v. Norwest Bank,* 499 N.W.2d 613, 618 (S.D.1993).

[¶ 29.] Southeast Properties presented the issue of punitive damages for the trial court's ruling at the close of evidence by way of a proposed jury instruction requesting punitive damages on the wrongful conversion claim. In discussing the proposed instruction, the parties were allowed an opportunity to state their position on the issue. The trial court was benefited by the entirety of the trial testimony in making its determination of whether to submit the issue to the jury. This situation, though not the ideal, provided the trial court with the same pertinent information that would have been gathered had a separate and distinct hearing been held on the matter.

[¶ 30.] After hearing all the evidence presented at trial, the trial court found the evidence was not sufficient to warrant submitting the issue of punitive damages to the jury. Though the evidence arguably supported submission of the issue to the jury, equally compelling evidence supported the trial court's finding that the evidence presented at trial did not support a punitive damages award. While we may not have resolved the factual issue as the trial court did, we will not substitute our judgment on the weight of the evidence. *Shepherd v. Moorman Mfg.,* 467 N.W.2d 916, 919 (S.D. 1991). The trial court's finding has not been shown to be clearly erroneous.

[¶ 31.] We have considered all the other issues presented by the parties and find them to be lacking in merit.

[¶ 32.] Affirmed.

[¶ 33.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., concur.

