#23716, #23725-aff in pt & rev in pt-JKM

**2006 SD 27**

# IN THE SUPREME COURT
## OF THE
## STATE OF SOUTH DAKOTA

\* \* \* \*

HARRY A. HOAAS,                                    Plaintiff and Appellee,

    v.

LARRY D. GRIFFITHS,                               Defendant and Appellant.

\* \* \* \*

## APPEAL FROM THE CIRCUIT COURT OF
## THE FIFTH JUDICIAL CIRCUIT
## BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

## HONORABLE SCOTT P. MYREN
Judge

\* \* \* \*

JOHN C. WILES of
Wiles & Rylance                          Attorneys for plaintiff
Watertown, South Dakota                  and appellee.

REED RASMUSSEN of
Siegel, Barnett & Schutz                 Attorneys for defendant
Aberdeen, South Dakota                   and appellant.

\* \* \* \*

ARGUED ON JANUARY 10, 2006

OPINION FILED **03/22/06**

MEIERHENRY, Justice.

[¶1.]        Plaintiff Harry A. Hoaas (Hoaas) brought this action against Defendant Larry D. Griffiths (Griffiths) to recover his share of corporate assets.  On the issue of Griffiths' liability, the trial court entered summary judgment in favor of Hoaas; the amount owed, $58,447.20, was undisputed.  The remaining issues were tried to a jury.  The jury was to decide whether Hoaas was entitled to punitive damages and whether Hoaas misappropriated funds from the corporation and, if so, what amount.  The jury found that Hoaas misappropriated funds in the amount of $68,850, but granted Hoaas punitive damages of $68,850.  The trial court offset the amount of money Hoaas misappropriated against the punitive damages award and entered judgment in favor of Hoaas in the amount of $58,447.20.  Both parties have raised issues on appeal.  We affirm in part and reverse in part.

## FACTS

[¶2.]        The parties were shareholders in the corporation Grand Casino, Inc., which owned and operated a casino in Watertown, South Dakota.  Since 1995, 51% of the stock was owned by Griffiths and 49% by Hoaas.  Hoaas also managed the casino.  Griffiths would typically visit the casino once a week; however, his involvement with the casino significantly decreased in 1996 and 1997 because of injuries he sustained in an auto accident.

[¶3.]        At the end of 1997, problems surfaced with the casino's bookkeeping.  An accounting showed that actual cash on hand was about $32,000 less than the approximately $65,000 cash on hand reflected by the casino's books.  At that time, the accountant adjusted the books to compensate for the shortfall.  Similar

adjustments were made in June and December of 1998, when shortfalls were again discovered. By the end of 1998, the casino's books showed a cash shortage of $84,720.23.

[¶4.] As manager of the casino, Hoaas was ultimately responsible for the cash on hand, the majority of which was kept in a lockbox at the casino during business hours. At night, Hoaas took the lockbox home with him and was the only one with a key to it. Hoaas, however, was unable to account for the cash shortages showing on the casino books, and the discrepancy between the recorded and actual cash on hand remained unexplained. In October 1999, Griffiths decided to do a complete audit. Two days later, Hoaas claimed that the lockbox was stolen from his vehicle during the night. Griffiths suspected that Hoaas concocted the theft story because of the impending audit. He fired Hoaas as manager of the casino on October 8, 1999. During the investigation into the theft, Hoaas informed the police that the lockbox contained $23,962.72. The casino's books showed that the cash on hand was supposed to be $58,716.89. The apprehended thieves, as well as others who observed the thieves counting the cash, said that the lockbox only contained about $8,000.

[¶5.] Later in 1999, Grand Casino, Inc. sued Hoaas to recover the corporate assets which he allegedly converted. While the lawsuit was pending, Griffiths sold the casino for $100,000 without formally notifying Hoaas, who still owned 49% of the corporation. Griffiths retained Hoaas' share of both the sale proceeds and casino's profits for 2000 and 2001. In documents filed with the IRS, Griffiths claimed that he was the sole owner of the casino. According to Griffiths, he felt he

had the right to keep Hoaas' share of the corporate assets and profits because Hoaas was responsible for the missing cash. Grand Casino's lawsuit against Hoaas, however, was administratively dismissed for failure to prosecute on April 8, 2002.

[¶6.] Approximately one year later, Hoaas filed for bankruptcy. Prior to filing, Hoaas commenced this lawsuit against Griffiths personally for failure to account, breach of fiduciary responsibility, conversion, misappropriation of corporate assets, and theft. The bankruptcy trustee authorized Hoaas' lawsuit against Griffiths to proceed in the trial court. The trustee filed an amended interpleader in the lawsuit of Grand Casino versus Hoaas wherein the trustee represented to the court that the casino had two options—either apply for relief from the automatic stay or ask for dismissal of the action and file a proof of claim in bankruptcy. The trustee learned, however, that the suit had already been dismissed. Neither Griffiths, personally, nor the corporation filed a claim in the bankruptcy proceedings. Hoaas' debts were discharged in bankruptcy on July 1, 2003.

[¶7.] Subsequently, Hoaas filed a summary judgment motion in this action and requested that the trial court enter judgment in his favor. The court granted partial summary judgment against Griffiths on Hoaas' claims of breach of fiduciary duty, conversion, misappropriation of corporate assets, and theft. The amount of the claim, if any, was to be determined by the jury. Griffiths attempted to resurrect his claim against Hoaas for misappropriating corporate funds by requesting leave to file a counterclaim. The court denied Griffiths' counterclaim because the claim belonged to the corporation and had been dismissed in bankruptcy. Nevertheless,

the court allowed Griffiths to present evidence of Hoaas' alleged misappropriation as an offset pursuant to 11 USC § 553, which gives a bankruptcy creditor the right "to offset a mutual debt owing by such creditor to the debtor" if both debts arose before filing for bankruptcy. Both Hoaas' claims and Griffiths' offset claim were tried to a jury. Additionally, the trial court allowed the jury to decide whether Hoaas was entitled to punitive damages.

[¶8.] At trial, the parties agreed that Griffiths withheld $58,447.20 from Hoaas, an amount which represented Hoaas' 49% share of the casino sale and profits. By special verdict, the jury determined that Hoaas took funds from the casino without authorization in the amount of $68,850. Additionally the jury awarded punitive damages to Hoaas in the same amount of $68,850.

[¶9.] After the verdict was returned, Griffiths requested that the judge disallow the punitive damage award because the offsetting amount of misappropriated funds of $68,850 exceeded the compensatory damages of $58,447.20. Griffiths argued that the offset reduced the compensatory damages to zero and that absent an award of compensatory damages, punitive damages should not have been awarded. Griffiths sought prejudgment interest on the amount of the offset. Hoaas also sought prejudgment interest on the compensatory damages of $58,447.20. The trial court denied prejudgment interest for both parties and rejected Griffiths' request to strike punitive damages, and the court entered judgment in favor of Hoaas in the amount of $58,447.20.

[¶10.] Both parties appeal and raise the following issues:

## ISSUES

1.  Whether the trial court erred by granting partial summary judgment to Hoaas on his claims against Griffiths.

2.  Whether the trial court erred by determining that Hoaas was entitled to punitive damages.

## DECISION

*Partial Summary Judgment on Hoaas' Claims*

[¶11.]     As we have repeatedly stated, summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits of the parties reveal no genuine issues of material fact. SDCL 15-6-56(c); *Wulf v. Senst*, 2003 SD 105, ¶17, 669 NW2d 135, 141. When considering a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Wulf*, 2003 SD 105, ¶17, 669 NW2d at 141. The moving party bears the burden of proving that no such issues exist. *Id.* The nonmoving party, however, cannot merely rely on general allegations or denials. *Id.* ¶18. Rather, the nonmoving party must set forth specific facts which show the existence of genuine issues of material fact. *Id.* When reviewing summary judgment, "we determine only whether a genuine issue of material fact exists and whether the law was applied correctly." *Id.* ¶19.

[¶12.]     An examination of the record in this case reveals that Griffiths filed no affidavits or other evidence to refute Hoaas' summary judgment motion. Hoaas, on the other hand, presented affidavits, documents, and Griffiths' deposition testimony in support of his motion. The only activity by Griffiths reflected in the record was his attorney's motion to withdraw because of a conflict of interest. The trial court

allowed the attorney to withdraw and held all matters in abeyance until Griffiths

retained new counsel or further informed the court. The new hearing on the

summary judgment was scheduled for October 6, 2004. Griffiths did not inform the

court nor did he appear for the October 6 hearing. Since Griffiths failed to respond

to the summary judgment motion, the record presented no genuine issues of

material fact. Consequently, the trial court orally granted summary judgment in

Hoaas' favor.

[¶13.]       On October 14, 2004, Griffiths' current attorney noticed his appearance

and requested additional time to acquaint himself with the case. The judge gave

him additional time and also allowed time to respond to Hoaas' proposed findings of

fact and conclusions of law. Griffiths' attorney filed objections to the findings; for

the most part, however, those objections were general objections and did not point

to specific evidence in the record sufficient to raise a genuine dispute of material

fact. What the judge had before him was Griffiths' deposition testimony wherein he

admitted selling the corporation and disposing of its proceeds as if he owned 100%

of the shares, even though he knew that Hoaas owned 49% of the corporation. In

his deposition, Griffiths also admitted claiming ownership of all the shares, income,

and proceeds of the sale on IRS documents, and he acknowledged that he had been

untruthful in that regard. Griffiths also did not deny holding a special meeting of

the casino's board of directors on November 27, 2001, the minutes of which

indicated that Griffiths was the only member of the board and that he served as

both the president and secretary. In those minutes, Griffiths recorded that no stock

had been issued to Hoaas, that Hoaas' debt to the corporation exceeded any interest

he may have been due because of the missing cash, and that the corporation should proceed with the sale. Griffiths also admitted in his deposition that the statement that Hoaas owned no stock was untrue.

[¶14.] On appeal, Griffiths claims that he intended to pay Hoaas when Hoaas accounted for the missing cash. He argues that this alone should have precluded summary judgment. His argument fails, however, because he did not present this argument or point to anything in the record to support his claim at the time the motion for summary judgment was considered by the trial court. Upon a motion for summary judgment, the trial court must consider the evidence in the light most favorable to the nonmoving party. The nonmoving party, however, has the responsibility to come forward with specific evidence which places a material fact in dispute. Griffiths failed to do so. He made no response to the summary judgment motion nor did he appear at the hearing. The judge had no disputing affidavit from Griffiths or anyone else. Griffiths did not offer evidence that money had been missing from the casino or that Hoaas had taken it. All the judge had in Griffiths' favor was Griffiths' general allegation that Hoaas owed him money from the casino. The specific evidence regarding his allegation only emerged when this case went to trial.

[¶15.] Under these circumstances, we cannot say that the trial court incorrectly granted the summary judgment motion. Neither the mere assertion that Hoaas had taken casino money nor Griffiths' belated claim of a contingent intent to pay Hoaas does not counter Griffiths' admissions that he disposed of corporate assets without Hoaas' knowledge and that he intentionally withheld both the

proceeds of that sale and profits of the corporation to which he knew Hoaas was entitled. All of the evidence before the trial court at the summary judgment motion indicated that Griffiths paid 100% of the proceeds from the sale of the corporation to himself and also kept 100% of the profits from the time period at issue. Griffiths placed those amounts in his personal account. He did not distribute the corporate assets to the other shareholder, Hoaas, and he did not place them in a corporate account. The evidence supports the trial court's finding that Griffiths failed to establish a genuine issue of material fact for any of Hoaas' claims, and therefore the trial court's grant of summary judgment was proper.

*Whether Punitive Damages were Recoverable*

[¶16.]    We review a trial court's decision to submit punitive damages to the jury under a clearly erroneous standard. *Kieser v. S.E. Props.*, 1997 SD 87, ¶27, 566 NW2d 833, 839-40. In order for the issue of punitive damages to be submitted to the jury, the proponent of those damages must establish by clear and convincing evidence that there is a reasonable basis to believe that a party's conduct was willful, wanton, or malicious. *Boomsma v. Dakota, Minn., & E. R.R. Corp.*, 2002 SD 106, ¶37, 651 NW2d 238, 246 (overruled on other grounds); *see also* SDCL 21-1-4.1. At the hearing regarding punitive damages, the trial court was presented with Griffiths' deposition, in which Griffiths admitted intentionally withholding Hoaas' portion of the corporate assets. Attached to the deposition were Griffiths' tax returns in which he claimed to be the sole owner of the casino. Thus, the evidence supported the trial court's conclusion that there was a reasonable basis to believe

Griffiths' conduct was willful, wanton, or malicious. That determination was not clearly erroneous.

[¶17.]    Second, Griffiths argues that even if Hoaas could properly pursue a punitive damages claim, Hoaas' unauthorized taking of $68,850 cancelled out the compensatory damage award, thus negating Hoaas' right to punitive damages. This issue hinges on whether the offset should apply first to the compensatory damages or whether it should apply to the aggregate amount of damages, which included both compensatory and punitive damages. This question has not previously been presented to this Court.

[¶18.]    We have "consistently held that punitive damages are not allowed absent an award for compensatory damages." Schaffer v. Edward D. Jones & Co., 521 NW2d 921, 928 (SD 1994) (citations omitted); *see also* Henry v. Henry, 2000 SD 4, ¶5, 604 NW2d 285, 288. One reason for the rule "is that we do not punish conduct, no matter how malicious or reprehensible, which in fact causes no injury." *Schaffer*, 521 NW2d at 928 (citations omitted). In this case, the trial court determined by summary judgment that Griffiths withheld Hoaas' share of the sale and profits of the corporation in the amount of $58,447.20. The court then let the jury decide whether Hoaas misappropriated corporate funds for his own use. The court also instructed the jury to consider whether Griffiths' conduct in withholding Hoaas' corporate share was of such a nature that punitive damages should also be awarded. The jury found that Hoaas had misappropriated $68,850, but it also found that Hoaas was entitled to $68,850 in punitive damages.

[¶19.] If the total offset of $68,850 is applied first to the compensatory damages, it would reduce the compensatory damages to zero. Without compensatory damages, Hoaas would not be entitled to punitive damages. On the other hand, if the offset is applied to the aggregate award of $127,297.20 (compensatory plus punitive), Hoaas would still be entitled to a judgment of $58,447.20.

[¶20.] In this case, the nature of the offset determines how it should be applied. Here, the trial court permitted Griffiths' claim against Hoaas to proceed under a provision in the bankruptcy code that allows "a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the [bankruptcy] case." 11 USC § 553. The United States Supreme Court characterizes the § 553 offset as follows:

> The right of setoff (also called "offset") allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." Studley v. Boylston Nat. Bank, 229 US 523, 528, 33 SCt 806, 808, 57 LEd 1313 (1913). Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.

Citizens Bank of Md. v. Strumpf, 516 US 16, 18, 116 SCt 286, 289, 133 LEd 2d 258 (1995). Generally, federal courts view the setoff as an equitable claim. *See, e.g.*, *In re* Pleasant, 320 BR 889, 894 (BankrNDIll 2004); French v. Bank One, Lima N.A. (*In re* Rehab Project, Inc.), 238 BR 363, 374 (BankrNDOhio 1999). Additionally, the burden of proof rests with the party asserting the setoff. *See, e.g.*, First Nat'l Bank of Louisville v. Hurricane Elkhorn Coal Corp. II, 763 F2d 188, 190 (6thCir 1985); United States v. Krause (*In re* Krause), 261 BR 218, 222 (BAP8thCir 2001); *In re*

Lason, Inc., 314 BR 296, 305 (BankrDDel 2004); Photo Mech. Servs., Inc. v. E.I.

Dupont De Nemours & Co. (*In re* Photo Mech. Servs., Inc.), 179 BR 604, 616

(BankrDMinn 1995). As explained by a legal encyclopedia,

> The doctrine of setoff, or compensation . . . is essentially an
> equitable one requiring that the demands of mutually indebted
> parties be set off against each other and that only the balance be
> recovered in a judicial proceeding by one party against the other.
> . . . It is a mode that equity adopts to compel the ultimate
> payment of a debt by one who in justice, equity, and good
> conscience ought to pay.

20 Am Jur 2d Counterclaim, Recoupment, & Setoffs § 6 (citations omitted); *see also*

First Nat'l Bank of Minneapolis v. Kehn Ranch, 394 NW2d 709, 716 (SD 1986)

("The allowance of a set-off recognizes the injustice resulting from compelling a

creditor to pay the bankrupt estate the full value of a claim owed, while at the same

time requiring the creditor to forfeit a claim due from the debtor.").

[¶21.] In this case, the trial court did not allow Griffiths to amend his

pleadings to assert a counterclaim by which he could recover affirmatively.

Griffiths was only allowed to introduce evidence that Hoaas converted funds from

the corporation in order to justify the amount Griffiths withheld when the

corporation was sold. That evidence was clearly offered to reduce the amount

Griffiths, as majority shareholder, owed to Hoaas as part of the sale of the casino.

[¶22.] The evidence to the jury was that $135,000 was missing from the

casino. Griffiths' 51% of the missing cash would have been $68,850, which is the

exact amount the jury entered on the verdict form. Thus, in effect, the verdict

determined that Griffiths owed Hoaas his share of the casino sale and profits in the

amount of $58,447.20, and also that Hoaas had misappropriated Griffiths' share of

the casino cash in the amount of $68,850. The parties, therefore, not only had mutually owing debts, but those debts arose from the same transaction.[1] The debts were basically part of the dissolution of the corporation of which the parties were the only shareholders. It would be inequitable for Hoaas to enjoy the full benefits of the sale and profits of the corporation without also being responsible for the money he misappropriated.

[¶23.]     Consequently, under the facts of this case we determine that the laws of equity require the amount of the offset first to be applied against the compensatory damages. We base this determination on the intertwined relationship of the two claims. Here, Hoaas' claim and Griffiths' offset are essential and integral to the parties' corporate relationship. Therefore, under the principles of equity Griffiths should be able to reduce the amount he owes to Hoaas by the amount he should have received from Hoaas. By doing so, Hoaas is not entitled to compensatory damages and therefore cannot be awarded punitive damages.[2]

---

1.     Federal courts refer to this same transaction analysis in bankruptcy proceedings as recoupment and distinguish it from setoff. *See, e.g.*, Reiter v. Cooper, 507 US 258, 263-65, 113 SCt 1213, 1218, 122 LEd2d 604 (1993); Conoco, Inc. v. Styler (*In re* Peterson Distrib., Inc.), 82 F3d 956, 959-60 (10thCir 1996); United States v. Dewey Freight Sys., 31 F3d 620, 622-23 (8thCir 1994); Clemens v. W. Milton State Bank (*In re* Clemens), 261 BR 602, 606 (BankrMDPa 2001); Sheehan v. Weiner (*In re* Weiner), 228 BR 647, 649-650 (BankrNDOhio 1998). This distinction, however, was not argued or addressed by the parties.

2.     Our holding in allowing the offset to be applied first to reduce compensatory damages when punitive damages are also awarded is limited by the facts of this case. Under a different set of facts, an offset may involve a transaction which is independent of a plaintiff's claims and, consequently, may not affect entitlement to punitive damages.

[¶24.] We affirm the trial court's grant of summary judgment in favor of Hoaas. We direct that the setoff determined by the jury must be applied to Hoaas' compensatory damages. Because the setoff negates compensatory damages, we reverse the award of punitive damages to Hoaas. In light of this decision, we need not address the other issues raised on appeal, and we remand to the trial court for judgment to be entered accordingly.

[¶25.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶26.] SABERS, Justice, concurs specially.

SABERS, Justice (concurring specially).

[¶27.] I concur specially to point out that, in my opinion, the trial court ignored two time honored principles that rose from these facts.

[¶28.] The basic facts are that Hoaas stole or misappropriated $68,850 from the corporation and Griffiths and they withheld $58,447 to offset the loss. This conduct was understandable, especially considering the principle that "possession is nine tenths of the law." Why deliver to a thief or misappropriator money you claim he owes you? Accordingly, the grant of summary judgment by the trial court was premature, if not wrong. The jury should have determined under proper instructions whether it was proper to offset the amount taken.

[¶29.] The second time honored principle is that a "person cannot profit from [one's] own wrong." Dacy v. Gors, 471 NW2d 576, 581 (SD 1991) (Sabers, J.,

dissenting). This principle supports our decision today that Hoaas should not recover a judgment, punitive damages, or costs.